UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARONNA WILLIAMS, on behalf of herself, and on behalf of JOHN DOE, *a minor*, and NASEEM STEVENS | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. |
| CITY OF CHICAGO, a municipal corporation; JORGE LOPEZ (Star #20258), in his individual and official capacity; ENRIQUE PACHECO (Star #20258), in his individual and official capacity; JOSEPH ZULKEY (Star #20541), in his individual and official capacity; and ANITA WHICHER (Star #21774) in her individual and official capacity | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs complain against Defendants, and allege as follows:

### Introduction

1. On May 2, 2018, Defendants entered the home of plaintiffs and unlawfully seized, searched, handcuffed, verbally abused, threatened, pointed weapons, and assaulted Naseem Stevens and John Doe, *a minor*. Karonna Williams is the mother of Stevens and Doe.

2. As Defendants entered Plaintiffs' home, they lowered Plaintiffs' interior-surveillance camera to shield a lawful recording of their unlawful deeds.

3. Defendants then broke open various doors inside the home, ordering Plaintiffs Stevens and Doe around their own home at gunpoint, while threatening to shoot them.

4. Defendants then handcuffed Stevens and Doe in their own home, while still holding them at gun point.

5. Defendants unlawfully searched Plaintiffs' home.

6. Defendants never provided Plaintiffs with a lawful warrant, their names, or badge numbers. They just left.

7. None of the Defendants accurately, and fully, documented their encounter with Plaintiffs, including displaying and pointing of deadly weapons, verbal threats of deadly force, handcuffing of Plaintiffs, including a minor child, and their destructive damage to Plaintiffs' property.

8. Plaintiffs are Black residents of Chicago, Illinois.

9. Defendants unlawful conduct is the by-product of policies and practices of the CPS which has, for decades, permitted its officers to violate the rights of Black residents of Chicago.

10. The CPD has a pattern, practice, and history of recklessly, disproportionately, and unjustifiably entering the homes of Black citizens without a proper warrant and/or lawful justification.

11. The CPD has failed to provide meaningful training, supervision, post-incident review, and/or or discipline for officers who have unlawfully entered the home of its citizens, particularly its Black and Latino citizens.

12. The CPD had failed to track data indicating officers who have repeated violations of unlawfully entering homes of citizens without lawful justification, particularly its Black and Latino U.S. citizens.

13. For years, CPD has permitted its police officers to brutalize Chicago residents, particularly Black and Latino U.S. citizens residing in Chicago, without any meaningful training, supervision, post-incident review, or discipline.

14. The CPD has also allowed its police officers to engage in the falsification of reported evidence, including underreporting, in an effort to cover up misconduct, and maintain its 'code of silence.'

## Parties

15. Plaintiff Karonna Williams is an adult female and resident of the Cook County, Illinois.

16. Plaintiff Naseem Stevens is an adult male and resident of Cook County, Illinois.

17. Plaintiff John Doe is a minor child, and a resident of the Cook County, Illinois. At the time of the incident Doe was fifteen years old.

18. Defendant City of Chicago is a municipal entity incorporated under the laws of the State of Illinois, which employs or employed all of the defendants as CPD police officers.

19. Defendant Jorge Lopez is an adult male and resident of Cook County, Illinois. At the time of this incident, Defendant Graham was employed as a police officer by Defendant City of Chicago.

20. Defendant Enrique Pacheco is an adult male and resident of Cook County, Illinois. At the time of this incident, Defendant Acevedo was employed as a police officer by Defendant City of Chicago.

21. Defendant Joseph Zulkey is an adult male and resident of Cook County, Illinois. At the time of this incident, Defendant Edwards was employed as a police officer by Defendant City of Chicago.

22.     Defendant Whicher is an adult female and resident of Cook County, Illinois. At the time of this incident, Defendant Hawkins was employed as a police officer by Defendant City of Chicago.

23.     At all times relevant, the officers acted under color of law and within the scope of their employment as police and/or law enforcement officers.

24.     All of the foregoing defendant police and/or law enforcement officers are sued in their individual capacities, as agents acting under color of state law and in the scope of their employment, while engaging in the actions alleged in this Complaint.

## The City of Chicago's Policies and Practices

25.     The defendant officers' unlawful conduct was directly caused by City of Chicago's embrace of a racist custom, policy and/or practice regarding police interaction with Black residents. These policies include inadequate training, inadequate supervision, inadequate post-incident review, and inadequate discipline of its police officers.

26.     The City of Chicago's police force has gained worldwide notoriety for extreme disrespect and brutality against Black residents in Chicago.

27.     In March 2014, a study was released by the American Psychological Association's Journal of Personality and Social Psychology, researchers studied 176 mostly White, male police officers, and tested them to see if they held an unconscious "dehumanization bias" against Black people by having them match photos of people with photos of big cats or apes. Researchers found that officers commonly dehumanized Black people.

28.     The Chicago Sun Times published a recent story and racially offensive picture of two White police officers posing with a Black man in custody. While the two White CPD officers held rifles, the young Black man was forced to wear deer antlers, as if he were an animal.

29. The ACLU has recently issued a report, which found that Black Chicagoans were subjected to 72% of all stop encounters, yet constitute just 32% of the city's population. And, even in majority White police districts, minorities were stopped disproportionately to the number of minority people living in those districts.

30. Chicago police officers can feel comfortable inflicting excessive brutality and constitutional violations against Black citizens, without fear of retribution.

31. There are inadequate policies and practices, meaningful training, and supervision, when it comes to use of force against Black citizens in Chicago.

32. Defendants abide by a 'code of silence.'

33. In 2012, a federal jury found in *Obrycka vs. Chicago* that the CPD engages an unwritten 'code of silence' and/or a widespread custom of failing to adequately investigate and discipline officers.

34. The City has a history of protecting "rogue" and violent police officers.

35. For nearly 20 years, Jon Burge, led a torture ring of Chicago police detectives against Black male Chicago residents, and he was protected.

36. A University of Chicago report issued in 2007, found that a brutality complaint filed against a police officer in Chicago is 94% less likely to be sustained than elsewhere. In Chicago, only .48% of brutality complaints are sustained, compared to 8% nationally.

37. Among 10,149 complaints of excessive force, illegal searches, racial abuse or false arrest filed by residents between 2002 and 2004 only 124 (1.2%) were sustained and only 19 cases led to a week-long suspension or worse, according to findings.

38. On December 9, 2014, in an address to the Chicago City Council, Chicago's mayor, Rahm Emanuel, admitted the existence of a "code of silence" within Chicago's police department. Mayor Emmanuel, the defendant City of Chicago's chief executive officer, said the

following in referring to the Chicago police department: "The problem is sometimes referred to as the thin blue line. The problem is other times referred to as the code of silence, and its tendency to ignore it. It is a tendency to deny it. It is a tendency in some cases to cover up the bad actions of colleagues."

39. After a year-long thorough investigation concluding in December 2016, the Justice Department's Civil Rights Division determined that the Chicago Police Department has engaged in inadequate training and supervision of its police officers, has failed to adequately address racially discriminatory conduct by officers, which in some respects is caused by deficiencies in CPD's systems of training, supervision, and accountability, and the corrosive effect on police legitimacy of excessive force, which falls most heavily on Chicago's communities of color.

40. Additionally, the DOJ found that CPD rarely undertakes a meaningful review when its officers use excessive force and deprives citizens, especially Black citizens, of their constitutional rights.

41. The DOJ report further "found reasonable cause to believe that CPD has engaged in a pattern or practice of unreasonable force in violation of the Fourth Amendment and that the deficiencies in CPD's training, supervision, accountability, and other systems have contributed to that pattern or practice."

42. The DOJ report noted that CPD uses force against Blacks almost ten times more than against Whites and called on the City of Chicago to tackle serious system deficiencies whose consequences disproportionately impact Black and Latino communities.

43. "The City fails to conduct any investigation of nearly half of police misconduct complaints," according to the DOJ report said. In order to address these ignored cases, the City must modify its own policies, and work with the unions to address certain CBA provisions, and in

the meantime, it must aggressively investigate all complaints to the extent authorized under these contracts," the DOJ report found.

44. The report said DOJ staff interviewed investigators with the Independent Police Review Authority (IPRA), which investigates allegations of police misconduct along with CPD's Bureau of Internal Affairs (BIA), and that they relayed that using overrides is not encouraged at IPRA. The DOJ also alleged that IPRA fails to provide training on how to use the process. "Not surprisingly," said the report, "this override provision was used only 17 times in the last five years."

45. However, the override option contained in the contract is still problematic, according to the report. For investigators with IPRA or BIA to use the override, they have to obtain an affidavit from the other agency's director verifying that he or she has reviewed "objective verifiable evidence" and concluded an investigation should ensue. "Not only does this process undermine the independence of IPRA, and create an additional procedural barrier to investigating misconduct, but requiring that objective verifiable evidence exists before an investigation can be undertaken puts the cart before the horse," said the report.

46. The DOJ report also notes that the provision to destroy records after five years "not only may impair the investigation of older misconduct, but also deprives CPD of important discipline and personnel documentation that will assist in monitoring historical patterns of misconduct." Similarly, the CBAs prevent CPD's Behavioral Intervention System and Personnel Concerns Program, both programs meant to flag problem officers, from considering misconduct allegations older than five years and limits how "not sustained" complaints (how complaints are classified when investigators claim allegations can't be proven true or false) are used to determine if an officer should be placed in the programs.

7

47. The DOJ also recommended changes to the "command channel review" process, outlined in the union contract and embedded in department policy, that allows various supervisors above an officer to review and comment on disciplinary decisions. The process undermines accountability, said the DOJ report. The DOJ agreed with the mayor's Police Accountability Task Force that the process "provides a platform for members who are potentially sympathetic to the accused officer to advocate to reduce or eliminate discipline."

48. "We recommended to the City during the course of this investigation that it modify the CCR process, and instead have discipline decided at a disciplinary conference headed by a single individual whose decision is reviewed directly by the Superintendent," said the report, which named the command channel review as one of numerous factors undermining police accountability in Chicago. The report claimed that these failures of the city's accountability systems contributes to distrust of police and erodes the relationship between communities and law enforcement, which in turn makes it harder for police to solve murders and other crimes.

49. The DOJ report called the city's failure to investigate so many complaints a major blow to police accountability, saying, "these are all lost opportunities to identify misconduct, training deficiencies, and problematic trends, and to hold officers and CPD accountable when misconduct occurs."

50. The DOJ report further concluded that the City of Chicago's labor agreement contract with the Fraternal Order of Police is a major impediment to the constitutional well-being of Black and Latino communities in Chicago.

51. Mayor Rah Emmanuel's Police Accountability task force found that the police contracts institutionalize the code of silence in the police department that shield cops form accountability. "The collective bargaining agreements between the police unions and the City have essentially turned the code of silence into official policy," the task force report read.

52. The agreements mandate disclosure of a complainant's identity to an accused officer before questioning, which is problematic because many complainants fear police retaliation.

53. People issuing complaints against the police must sign sworn affidavits under threat of perjury, which intimidate victims of misconduct from reporting.

54. The agreements limit investigations into misconduct complaints filed more than five years after an incident, requiring destruction of most disciplinary records older than five years.

55. The City of Chicago maintains a widespread custom and pattern of its police officers unlawfully entering the homes of Chicago residents, especially misconduct directed at Black and Latino U.S. citizens.

56. In a March 31, 2019 Sun-Times interview, City of Chicago Police Superintendent, Eddie Johnson admitted that there exists a "code-of-silence" within the CPD and that some officers "look the way" when it comes to reporting police misconduct. Superintendent Johnson was quoted as saying, "There are a lot of reasons why cops might not report misconduct. If they see their partner engage in misconduct, they may look the other way."

57. There have been numerous media reports on television and in print, over just the past five years, regarding numerous unlawful raids of homes by Chicago police officers directed disproportionately at Black and Latino U.S. citizens.

58. On April 28, 2019, the CBS local evening news broadcast led their in-depth investigation into a disturbing pattern practice of unlawful CPD home raids of Chicago's Black and Latino residents, and reported as follows:

> "CBS 2's ongoing investigation has revealed a troubling pattern when officers execute search warrants at the wrong homes. Multiple families have accused officers of pointing guns at children, handcuffing innocent people and continuing to search the home after learning they were at the wrong location.

>While every patrol officer is required to wear a body camera – 8,200 have been issued to officers, including tactical teams – many are executing search warrants without wearing them.
>
>For months, CBS 2's investigative unit has been asking the police department for data on how often and where wrong raids happen. But they have refused to turn over complete records in response to CBS 2's Freedom of Information Act requests.
>
>When questioned by 2 Investigator Dave Savini in November, Chicago Police Superintendent Eddie Johnson acknowledged the police department tracks that data but would not answer questions about why it hasn't been released.
>
>Recently the police department sent CBS 2 a list of 2,708 search warrants served since 2016. But the records fail to clarify which, or if any, involve wrong raids. Police also refused to answer any questions about the data they did send." Weblink: [https://cbsloc.al/2GEQePn]

59. The City of Chicago maintains a policy of permitting its officers to use unlawful and unauthorized tactics to search homes to confiscate guns and drugs.

60. The City of Chicago maintains a policy of permitting its officers to use unlawful and unauthorized tactics to effectuate arrests, including unlawful and unjustifiably entering the homes of Black and Latino citizens without a warrant and/or other lawful justification.

61. The City of Chicago refuses to discipline officers for engaging in misconduct, especially misconduct directed at Black and Latino U.S. citizens.

62. The City of Chicago lacked a mechanism to supervise, discipline, and/or train its police officers who had engaged in misconduct and/or were prone to.

63. The plaintiffs were injured because defendant police officers knew that they could violate the Constitutional rights of Black citizens, and that if they did so, no one of any authority would question their conduct in any meaningful way, and/or they would face no consequences.

64. The code of silence was the moving force behind the each of the defendants' actions as they knew they would suffer no consequences for their unlawful action.

**Count I – State Law Claim: Assault**
*All Defendants*

65. Paragraphs 1-64 of this Complaint are incorporated herein.

66. In the manner described above, the conduct of one or more of the individual defendants, acting under color of law and within the scope of their employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing plaintiffs' injuries.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

68. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

69. As a result of the misconduct, undertaken pursuant to the City's policy and practice as described above, plaintiffs sustained injuries, including but not limited to a reasonable apprehension of great bodily harm and emotional harm.

### Count II - State Law Claim: Trespass
*All Defendants*

70. Paragraphs 1-64 of this Complaint are incorporated herein.

71. As more fully described in preceding paragraphs, Defendants entered and searched Plaintiffs' home without a legal justification to do so. This constituted an unwanted and uninvited invasion into Plaintiffs' exclusive possession of their home and garage in violation of Illinois common law.

72. This unwarranted invasion proximately caused damages to Plaintiffs and has caused an interference with their use and enjoyment of their home.

73. Illinois law provides that public entities, such as defendant, City of Chicago, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

74. At all relevant times, the Defendant officers were agents of Defendant, City of Chicago, and employees of the Chicago Police Department, acting within the scope of their

employment. Defendant City of Chicago, therefore, is liable as principal for all torts committed by its agents, the Defendant police officers.

### Count III – State Law Claim: False Arrest
*All Defendants*

72. Paragraphs 1-64 of this Complaint are incorporated herein.

73. That Plaintiffs Stevens and Doe were restrained and/or arrested by Defendants when they held him down and waited for police to take him into custody.

74. That Defendants acted without reasonable grounds and/or probable cause to believe Plaintiffs Stevens and/or Doe committed an offense warranting restraint and/or arrest. That Defendants knew there was no probable cause to restrain and/or arrest Plaintiffs Stevens and/or Doe, yet they proceeded in spite of such knowledge.

75. The Defendants actions constitute willful and wanton conduct.

76. As a direct and proximate result of the aforesaid, the Plaintiffs suffered injuries of a personal and pecuniary nature, including but not limited to emotional pain and suffering, attorneys' fees, and costs.

### Count IV – State Law Claim: Conspiracy
*All Defendants*

77. Paragraphs 1-64 of this Complaint are incorporated herein.

78. In the manner described above, all defendants, acting in concert, reached an agreement among themselves to arrest, attack, and brutalize the Plaintiffs, and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving the Plaintiffs of these rights.

79. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

80. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

81. As a result of the Defendant police officers' misconduct described in the Count, undertaken pursuant to the City of Chicago's widespread policy, practice, and/or custom as described above, plaintiffs suffered injury, including loss of liberty, emotional harm, and financial harm.

### Count V - State Law Claim: Intentional Infliction of Emotional Distress
*All Defendants*

82. Paragraphs 1-64 of this Complaint are incorporated herein.

83. The actions, omissions, and conduct of the Defendant police officers as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as is more fully alleged above.

84. As a direct and proximate result of the Defendants' actions, Plaintiffs suffered injury, including emotional and financial harm.

### Count VI – State Law Claim: Respondeat Superior
*All Defendants*

85. Paragraphs 1-64 of this Complaint are incorporated herein.

86. In committing the acts alleged in the preceding paragraphs, the unknown Defendant police officers were members and agents of City of Chicago acting at all relevant times within the scope of their employment.

87. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### Count VII – State Law Claim: Indemnification
*All Defendants*

88. Paragraphs 1-64 of this Complaint are incorporated herein.

89. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

90. The unknown Defendant police officers are or were employees of the City of Chicago who acted within the scope of their employment in committing the misconduct described above.

### Count VIII - State Law Claim: Conversion
*All Defendants*

91. Paragraphs 1-64 of this Complaint are incorporated herein.

92. The Defendant police officers unlawfully exercised dominion or control over plaintiffs' property, and the property was not returned to plaintiffs in usable form.

93. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

94. As a result of individual Defendants' misconduct described in this Count, Plaintiffs suffered injury, including loss of property and emotional distress.

95. The misconduct described in this Count was undertaken by individual Defendant police officers acting within the scope of their employment and under color of law such that their employer is liable for their actions.

### Count IX – 42 U.S.C. §1983: Monell
*City of Chicago*

96. Paragraphs 1-64 of this Complaint are incorporated herein.

97. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

98. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

99. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy, and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind the very type of misconduct at issue here by failing to adequately train and supervise its officers regarding the use of excessive force on citizens, especially Black citizens, and that its failure to do so manifests deliberate indifference.

    b. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately review and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiffs. Specifically, Chicago police officers accused of misconduct can be confident that those accusations will not be investigated in earnest by the CPD, and that the CPD will decline to recommend discipline even where the officer has engaged in excessive force, assault and/or racist behavior.

    c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, CPD officers abuse its Black citizens in a manner similar to that alleged by plaintiffs in this Count on a frequent

     basis, yet CPD make findings of wrongdoing in a disproportionately small number of cases;

   d. City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the CPD.  Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go undisciplined for doing so; and,

   e. The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

  100. As a matter of express policy, the City of Chicago does not retain most records, which are more than seven years old documenting allegations of excessive force against police officers, or allegations concerning police officers making unjustified intrusion into citizens' homes, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career.

  101. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers.

  102. Further, the City has a pattern and practice of allowing the police officers to unlawfully enter residents' homes and to disengage power down their own body cameras, and in order to shield detection of their misdeeds.

  103. As a matter of express policy, CPD refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint, including those complaints concerning unlawful entry into homes of Black citizens.

104. As a result of the Defendant police officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, plaintiffs have suffered injury, including emotional home and emotional distress.

### Count X – 42 U.S.C. §1983: Excessive Force
*All Defendants*

105. Paragraphs 1-64 of this Complaint are incorporated herein.

106. In the manner described above, the conduct of one or more of the Defendants constituted excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

107. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' Stevens and Doe's constitutional rights.

108. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

109. As a result of the Defendants' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, plaintiffs have suffered injury, including emotional home and emotional distress.

### Count XI – 42 U.S.C. § 1983: Failure to Intervene
*All Defendants*

110. Paragraphs 1-64 of this Complaint are incorporated herein.

111. In the manner described above, one or more of the unknown defendant police officers had a reasonable opportunity to prevent the violation of Plaintiffs' Constitutional rights as set forth above, but failed to do so.

112. The Defendant police officers' actions were undertaken intentionally, with malice and reckless indifference to plaintiffs' rights.

17

113. The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Chicago, such that Defendant City of Chicago is also liable, as described above.

114. As a result of the unknown Defendant police officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, plaintiffs have suffered injury, including emotional and financial harm.

### Count XII – 42 U.S.C. § 1983: Conspiracy to Deprive Constitutional Rights
*All Defendants*

115. Paragraphs 1-64 of this Complaint are incorporated herein.

116. In the manner described above, there was an agreement between the Defendants to deprive Plaintiffs of their constitutional rights.

118. Specifically, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

119. The conspiring Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

120. As a result of Defendant officers' misconduct described in this Count, undertaken pursuant to the City of Chicago's policy and practice as described above, Plaintiffs have suffered injury, including loss of liberty, emotional harm, and financial harm.

### Count XIII – 42 U.S.C. § 1983: False Arrest
*All Defendants*

121. Paragraphs 1-64 of this Complaint are incorporated herein.

122. That Plaintiff Plaintiffs Stevens and Doe were restrained and/or arrested by Defendants when they held him down and waited for police to take him into custody.

123. That Defendants acted without reasonable grounds and/or probable cause to believe Plaintiffs Stevens and/or Doe committed an offense warranting restraint and/or arrest. That Defendants knew there was no probable cause to restrain and/or arrest Plaintiffs Stevens and Doe, yet they proceeded in spite of such knowledge.

124. The Defendants actions constitute willful and wanton conduct.

125. As a direct and proximate result of the aforesaid, the Plaintiffs Stevens and Doe suffered injuries of a personal and pecuniary nature, including but not limited to emotional pain and suffering, attorneys' fees, and costs.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants, awarding compensatory damages, punitive damages, attorneys fees and attorneys' fees, equitable relief, and any other relief this Court deems just and appropriate.

**LAW OFFICES OF RAHSAAN A. GORDON**

By: /S/ Rahsaan A. Gordon
Attorney for Plaintiffs

Rahsaan A. Gordon
**LAW OFFICES OF RAHSAAN A. GORDON**
333 West Wacker Drive, Suite 500
Chicago, Illinois 60606
(312) 422-9500
(312) 422-9507
Firm I.D. 42809
rg@attorneygordon.com